ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL X

| | | |
|---|---|---|
| EL PUEBLO DE PUERTO RICO<br><br>Recurrido<br><br><br>V.<br><br>KEVIN GILS VEGA QUINTANA<br><br>Peticionario | TA2026CE00742 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Mayagüez<br><br>Caso Núm.: ISVP202400076-0078<br><br>Sobre:<br><br>Art. 401 Ley 4, Art. 6.05 Ley 168, Art. 6.22 |

Panel integrado por su presidenta, la Juez Grana Martínez, el Juez Ronda Del Toro, el Juez Sánchez Báez y la Juez Lotti Rodríguez

**Ronda Del Toro, Juez Ponente**

# RESOLUCIÓN

En San Juan, Puerto Rico, a 30 de junio de 2026.

La Sociedad para Asistencia Legal compareció en representación del señor Kevin G. Vega Quintana (peticionario) y solicitan la revisión de la Resolución que emitió el Tribunal de Primera Instancia, Sala de Mayagüez, emitida el 28 de abril de 2026 y notificada el 14 de mayo de 2026. Mediante la referida Resolución, el Tribunal de Primera Instancia le denegó al peticionario la devolución de sus huellas dactilares y las fotografías del fichaje.

Evaluado el recurso, resolvemos denegar el auto de *certiorari*.

## I.

El señor Kevin G. Vega Quintana alegó en el recurso ante nos que se presentaron cinco denuncias en su contra. Una (1)

bajo el Artículo 401[1] de la Ley de Sustancias Controladas de Puerto Rico, Ley Núm. 4 de 23 de junio de 1971, según enmendada; dos (2) cargos por los Artículos 6.05[2] y 6.22[3] de la Ley de Armas de Puerto Rico de 2020, Ley Núm. 168-2019, y dos (2) cargos menos graves por violación al Código Penal de Puerto Rico de 2012, por el Artículo 177, sobre amenazas y el Artículo 241, sobre alteración a la paz, 33 LPRA secs. 5243 y 5331.

En cuanto a los delitos menos graves, surge del apéndice incluido en el recurso, que la denuncia por el Artículo 177 del Código Penal, sobre amenazas, *supra*, lee de la siguiente manera:

> El referido imputado Kevin Gils Vega Quintana allá en o para el 22 de mayo de 2024, en Añasco, Puerto Rico, que forma parte de la jurisdicción del Tribunal de Primera Instancia de Puerto Rico, Sala Superior de Mayagüez, ilegal, voluntaria, maliciosa, a sabiendas y criminalmente REALIZÓ AMENAZAS A LA SRA. SONIA QUINTANA TORRES CON CAUSAR UN DETRMINADO DAÑO A SU PERSONA Y/O SUS FAMILIARES, INTEGRIDAD CORPORAL, CONSISTENTE EN QUE LE MANIFESTÓ QUE HIBA (sic) a MATAR A TODO EL MUNDO Y QUE CON LA PISTOLA SE HACÍA.

El peticionario adujo que el 15 de julio de 2024, se celebró la vista preliminar y se determinó no causa en los delitos graves imputados. Indicó que a petición del ministerio público se celebró la vista preliminar en alzada el 23 de agosto de 2024 y se determinó no causa en los delitos graves imputados. Manifestó que, luego, el 2 de octubre de 2024 el señor Vega Quintana hizo

---

[1] Artículo 401 – Actos Prohibidos (A) y Penalidades
   a. Excepto en la forma autorizada en esta ley, será ilegal el que cualquier persona, a sabiendas o intencionalmente:
   1. Fabrique, distribuya o dispense, transporte u oculte, o posea con la intención de fabricar, distribuir, dispensar, transportar u ocultar una sustancia controlada.
   2. Produzca, distribuya o dispense, transporte u oculte o posea con la intención de distribuir o dispensar, transportar u ocultar una sustancia falsificada.
   […]

[2] Artículo 6.05. Portación, Transportación o Uso de Armas de Fuego sin Licencia. 25 LPRA sec. 466d.

[3] Artículo 6.22. Fabricación, Distribución, Posesión y Uso de Municiones; Importación de Municiones. 25 LPRA sec. 466u.

alegación por los delitos menos graves imputados sobre los artículos 171 y 241 del Código Penal y fue sentenciado por el tiempo que cumplió en detención preventiva.

Así las cosas, el 28 de enero de 2026, el señor Vega Quintana presentó una moción sobre *Solicitud Devolución de Fotos y Huellas*[4]. Solicitó la devolución de las fotos y huellas dactilares obtenidas como parte del procesamiento de los casos.

El ministerio público se opuso[5]. En síntesis, alegó que el imputado fue arrestado por la presunta comisión de delitos graves y menos graves. Que aunque el Tribunal determinó no causa para acusar en los delitos graves, el imputado formuló alegación de culpabilidad por los delitos menos graves y fue sentenciado a tiempo cumplido. Alegó que el imputado resultó convicto por los delitos menos graves, por lo que, no se trató de un escenario de absolución total ni de archivo completo del proceso penal. Agregó que la determinación de no causa respecto a los delitos graves, no equivalía a una exoneración total, pues el proceso penal culminó en convicción firme.

Trabada la controversia, el 1ro de abril de 2026, el foro primario celebró una vista argumentativa.

El 6 de abril de 2026 la defensa presentó moción en réplica fijando su postura sobre la devolución de fotos y huellas. Aludió al Artículo 4 de la Ley Núm. 45 que indica lo siguiente:

> Cualquier persona a la que se le impute la comisión de su delito grave o menos grave producto de una misma transacción o evento que resulte absuelta luego del juicio correspondiente, o por orden o resolución del Tribunal o toda persona que reciba un indulto total y absoluto del Gobernador, podrá solicitar al Tribunal, la devolución de las huellas digitales y fotografías. [...] 25 LPRA sec. 1154.

---

[4] SUMAC TA, Apéndice, entrada 9.
[5] SUMAC TA, Apéndice, entrada 10.

En esencia, alegó que en *Santiago Cora v. ELA*, 2025 TSPR 44, el Tribunal Supremo reconoció que la Ley Núm. 45, supra, le faculta para que un ciudadano convicto por delito menos grave solicite la devolución de sus huellas digitales y fotografías. Aludió, a su vez, al caso de *Pueblo v. Torres Albertorio*, 115 DPR 128-130 (1984). Sobre este reseñó, en parte, que la retención de fotografías y huellas dactilares tomadas a una persona que luego es exonerada del delito podría constituir una invasión de su derecho a la intimidad mientas no se le devuelvan.

Tras ello, el 28 de abril de 2026, notificada el 14 de mayo de 2026, el foro primario emitió la Resolución cuya revisión se nos solicita, donde declaró *no ha lugar* la solicitud de devolución de huellas y fotos. Entre los fundamentos para arribar a esta decisión, el foro primario indicó que "si bien no prosperó el delito grave originalmente imputado, el imputado resultó convicto por un delito menos grave derivado de los mismos hechos, por lo que es nuestra conclusión que no se configura el supuesto de absolución total requerido por ley."[6] Más adelante el foro primario razonó que, "la existencia de una convicción, aun por delito menos grave, inhabilita al peticionario para solicitar la devolución de sus datos de identificación tomados válidamente en el curso de la investigación, ya que el criterio determinante bajo la ley es la ausencia de convicción, no la gravedad de los delitos."[7]

En desacuerdo, el señor Vega Quintana compareció ante nosotros mediante el recurso que nos ocupa y alegó que el TPI cometió el siguiente error:

> Erró el Tribunal de Primera Instancia al declarar no ha lugar la solicitud de devolución de huellas dactilares y fotos del peticionario, a pesar de que el ministerio público no demostró la existencia de un interés

---

[6] SUMAC TA, Apéndice 2, Resolución pág. 3.
[7] Íd.

gubernamental apremiante ni de circunstancias especiales que justificaran la retención de dichas huellas y fotografías.

Junto al recurso, el peticionario incluyó una *Moción Solicitando se Acepte Presentación Física de Disco Compacto Conteniendo Grabación de Audio*. Recibido el recurso, le concedimos término al Procurador General para que replicara y así lo hizo.

Evaluado el recurso, disponemos.

## II.

## A.

El recurso de *Certiorari* es un auto procesal extraordinario por el cual un peticionario solicita a un tribunal de mayor jerarquía que revise y corrija las determinaciones de un tribunal inferior. Pueblo v. Rivera Montalvo, 205 DPR 352, 372 (2020). A su vez, se ha indicado que "el *certiorari* es un mecanismo extraordinario que procede, discrecionalmente, cuando no hay otro mecanismo disponible." Pueblo v. Guadalupe Rivera, 206 DPR 616, 632 (2021). A diferencia del recurso de apelación, el tribunal superior puede expedir el auto de *certiorari* de manera discrecional. Pueblo v. Rivera Montalvo, *supra*; Pueblo v. Díaz de León, 176 DPR 913, 917-918 (2009).

El Tribunal Supremo ha indicado que la discreción significa tener poder para decidir en una u otra forma, esto es, para escoger entre uno o varios cursos de acción. Pueblo v. Rivera Santiago, 176 DPR 559, 580 (2009); Pueblo v. Ortega Santiago, 125 DPR 203, 211 (1990). El adecuado ejercicio de la discreción judicial está "inexorable e indefectiblemente atado al concepto de la razonabilidad". Pueblo v. Ortega Santiago, *supra*. Así pues, un tribunal apelativo no intervendrá con las determinaciones discrecionales de un tribunal sentenciador, a no ser que las

decisiones emitidas por este último sean arbitrarias o en abuso de su discreción. Pueblo v. Rivera Santiago, *supra*, pág. 581.

Con el fin de que podamos ejercer de una manera sabia y prudente nuestra facultad discrecional de entender o no en los méritos de los asuntos que son planteados mediante el recurso, la Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendado, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, 215 DPR ___ (2025), 4 LPRA Ap. XXII-B, señala los criterios que debemos tomar en consideración al atender una solicitud de expedición de un auto de *Certiorari*.  La referida regla dispone lo siguiente:

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari,* o de una orden de mostrar causa:
>
> a.   Si el remedio y la disposición de la decisión recurrida a diferencia de sus fundamentos son contrarios a derecho.
>
> b.   Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> c.   Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> d.   Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> e.   Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> f.   Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> g.   Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

**B.**

La Ley de Huellas Digitales y Fotografías por Delito Grave, Ley Núm. 45 de 1 de junio de 1983, según enmendada, 25 LPRA

sec. 1151 *et seq,* dispone en la Exposición de Motivos que, "la toma de huellas digitales y fotografías son procedimientos usuales y necesarios para la labor de la policía en protección de la seguridad pública y en la persecución del crimen".    En lo aquí pertinente los Artículos 1 y 4 de la Ley Núm. 45, *supra*, estatuyen lo siguiente:

> Artículo 1.
>
> El Superintendente de la Policía, el Director del Negociado de Investigaciones Especiales del Departamento de Justicia, o cualquier persona autorizada por éstos, o cualquier persona autorizada por Ley a esos efectos, deberá tomarle las huellas digitales y fotografiar a cualquier persona a la que, previa determinación de causa probable para arresto, se le impute la comisión de un delito grave. 25 LPRA sec. 1151.
>
> Artículo 4.
>
> Cualquier persona a la que se le impute la comisión de su delito grave o menos grave producto de una misma transacción o evento que resulte absuelta luego del juicio correspondiente, o por orden o resolución del Tribunal o toda persona que reciba un indulto total y absoluto del Gobernador, podrá solicitar al Tribunal, la devolución de las huellas digitales y fotografías. El peticionario notificará al Ministerio Publico y de este no presentar objeción dentro del término de diez días, el Tribunal podrá ordenar, sin vista, la devolución solicitada. De haber objeción del Ministerio Publico, el Tribunal señalará vista pública a esos efectos. 25 LPRA sec. 1154.

De una lectura del Art. 4 de la Ley Núm. 45, *supra*, se desprende que el legislador habilitó el mecanismo de devolución de fotos y huellas dactilares únicamente para las personas que fueran absueltas o indultadas de forma total y absoluta por el Gobernador. Santiago Cora v. ELA, 2025 TSPR 44, 215 DPR __ (2025).

Recientemente, en Santiago Cora v. ELA, *supra*, el Tribunal Supremo se expresó en cuanto a si el Estado está obligado a devolver las fotografías de fichaje y las huellas dactilares de una

persona que extinguió una sentencia penal, y logró eliminar su convicción del Certificado de Antecedentes Penales. Bajo ese escenario, el foro Supremo indicó no existía una obligación estatutaria de entregarle sus fotos y huellas dactilares a la persona que cumplió una sentencia por la comisión de un delito. En ese caso, el señor Ramón Luis Santiago Cora reflejaba una condena por agresión agravada, según tipificada en el Artículo 95(c) del derogado Código Penal de 1974. Por este delito fue sentenciado a pena de multa, el 15 de junio de 1998. En el año 2023, el señor Santiago Cora le solicitó al Tribunal de Primera Instancia que ordenara la eliminación de sus antecedentes penales, así como la devolución de las huellas digitales y fotografías obtenidas durante su arresto. Respecto a la petición de la eliminación de huellas dactilares, el foro primario eludió expresarse sobre este asunto. Más adelante, el Estado acudió al Tribunal Supremo. El máximo foro, evaluó el derecho a la intimidad de las personas arrestadas, respecto a la obtención de fotografías y huellas dactilares. Sobre ello, reiteró que, "la expectativa de intimidad de una persona que es arrestada válidamente es limitada". Santiago Cora v. ELA, *supra*, citando a Pueblo v. Santiago Feliciano, 139 DPR 361, 390 (1995). Agregó que, "la persona que extingue una sentencia criminal no alberga una expectativa razonable de intimidad frente al Estado sobre los datos de identificación accesorios a su arresto". Santiago Cora v. ELA, supra. Entonces, el Tribunal Supremo determinó que, "[t]ampoco existe una obligación estatutaria de entregarle sus fotos y huellas dactilares a la persona que cumplió una sentencia por la comisión de un delito." Ahora bien, manifestó que estas pueden permanecer retenidas, bajo un estricto margen de confidencialidad. Santiago Cora v. ELA, *supra*. Concluyó el

Tribunal Supremo que en casos "donde la probabilidad de divulgación de datos personales es ínfima, el interés público se antepone a la indeseabilidad de que el Estado conserve de forma confidencial las huellas dactilares y fotografías incidentales a un arresto válido." Íd. Como parte del análisis, el foro Supremo afirmó que el artículo 4 de la Ley Núm. 45, supra, únicamente vislumbra que pueden solicitar la devolución de fotos y huellas dactilares las personas que: (1) resultaron absueltas, o (2) recibieron un indulto total y absoluto del Gobernador. Concluyó que ninguno de esos supuestos se encontraba presente en la controversia de Santiago Cora.

### III.

El peticionario Vega Quintana alegó, en síntesis, que la Policía de Puerto Rico no tenía autoridad en ley para tomar ni conservar huellas digitales y fotografías a las personas imputadas por la comisión de delitos menos grave. Aludió al caso de *Pueblo v. Torres Albertorio*, supra, para indicar que se permite la conservación de huellas y fotografías cuando el Estado demuestra circunstancias especiales mediante prueba convincente. Adujo que en el caso de autos el ministerio público no estableció las circunstancias especiales que justifiquen la retención de las huellas y fotos tomadas al peticionario, por los delitos graves por los cuales resultó exonerado, más allá de indicar que hizo alegación por los delitos menos graves.

El Estado por su parte, alegó, en esencia, que el señor Vega Quintana fue procesado simultáneamente por cinco cargos que se originaron a raíz de los mismos eventos. Adujo que tres de esos cargos por delitos graves, no prosperaron en vista preliminar, mientras que en los dos por delitos menos graves, el peticionario fue declarado culpable. Señaló que ese resultado no implicó una

absolución, sino una condena parcial.  Arguyó, a su vez, que el Artículo 4 Ley Núm. 45 de 1983, *supra*, atiende exclusivamente si la persona resultó absuelta o indultada totalmente, lo que aquí no ocurrió.  Manifestó, además, que la Ley 45 de 1983, *supra*, no crea un derecho automático a la devolución de un fichaje que fue tomado válidamente en virtud de los cargos graves coexistentes con menos graves, cuando el resultado final del proceso incluyó la condena por dos de los cargos ventilados.

Al examinar la Resolución de la cual se recurre junto al derecho aquí aplicable, no encontramos criterio jurídico que nos mueva a intervenir con la decisión recurrida.  El foro primario emitió una  Resolución debidamente fundamentada,  luego  de celebrar una vista y revisar los escritos de ambas partes.  Determinó el foro primario que no procedía la devolución de los datos dactilares y fotografías.  Entre los fundamentos para su decisión, expresó que "el imputado resultó convicto por un delito menos grave derivado de los mismos hechos, por lo que es nuestra conclusión que no se configura el supuesto de absolución total requerido por ley".[8]  Agregó el foro primario que el criterio determinante bajo la Ley 45 de 1983 es la ausencia de convicción, no la gravedad del delito.

Según los hechos que informa esta causa, al señor Vega Quintana se le tomaron huellas dactilares y fotografías tras la determinación de causa probable para su arresto. En ese momento, al peticionario se le imputó la comisión de cinco (5) delitos, tres (3) de ellos de carácter grave y dos (2) menos graves. Así que, en efecto, las fotografías de fichaje y las huellas dactilares se obtuvieron como parte de un proceso válido, a raíz de

---

[8] SUMAC TA, Apéndice 2, Resolución pág. 3.

determinarse causa probable para el arresto por delitos producto de una misma transacción o evento, tal como lo razonó el foro primario. Aun cuando los delitos graves no prosperaron, el peticionario aceptó culpabilidad por los dos (2) menos graves y cumplió por ello. Por tanto, no resultó absuelto en su totalidad, ni fue indultado por algún gobernador. Bajo ese escenario, no se cumplieron los criterios que menciona el Artículo 4 de la Ley 45 de 1983 que permitiría la devolución de los datos obtenidos.

En consecuencia, luego de examinar detenidamente la resolución recurrida y el petitorio de Vega Quintana, no vemos cumplidos ninguno de los criterios de la Regla 40 de nuestro Reglamento, *supra*, que amerite ejercer nuestra función discrecional, para variar la determinación del foro primario. El peticionario no demostró que el foro primario incurriera o actuara de forma errada o en abuso de su discreción en la interpretación y aplicación del Artículo 4 de la Ley 45, *supra* y al disponer de la controversia ante su consideración. Tampoco se nos demostró ninguna otra razón que justifique la expedición del auto solicitado.

## IV.

Por los fundamentos antes expuestos, *denegamos* expedir el recurso solicitado.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones